UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA M. GRAY,

    Plaintiff,

v.                                             Case No. 8:11-cv-2282-T-17TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

    Defendant.
                                               /

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff was forty-seven years old at the time of her administrative hearing in March 2011. She stands 5' 2" tall and weighed 202 pounds. Plaintiff received an AA degree in May 1999 in professional communications. Her past relevant work was as a dialysis tech, foreclosure specialist, patient care tech, and refinance specialist. Plaintiff applied for disability benefits and Supplemental Security Income in July 2009, alleging disability as of

June 25, 2009, by reason of arthritis in right hip, cervical osteomyelitis, chronic pain, and depression. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified on her own behalf.

In essence, Plaintiff claims she cannot work due to extreme pain in her neck and back; pain, numbness and tingling on her left side; and her inability to stand or sit for any length of time. By her account, these conditions are constant. She often has muscle spasms from her shoulder to the bottom of her heel. She also has high blood pressure and gets migraines. She wakes up with headaches daily. Medication has not helped. She no longer takes medication for her neck and arm pain because of constipation. She uses hot baths, a TENS unit and a heating pad for her pain and she has a neck massager. She is currently seeing her doctor for her physical problems once a month. She also has problems concentrating and staying focused for more than ten minutes. She gets stressed. She has difficulty being in a room full of men due to things that happened to her in the past. She takes Lamictal for her depression and mood swings.

On a daily basis, she studies a lot since she is in college part-time. She only takes two classes since more than that is too stressful for her. She watches movies, reads her Bible and listens to jazz. She needs to switch between sitting and standing all day long. She cannot carry a load of wash downstairs or lift an iron skillet when washing dishes. She is a recovering addict and alcoholic and has been sober for three years. She attends three

Narcotics Anonymous and Cocaine Anonymous meetings a week. She also takes a trauma class once a week and she meets with a psychiatrist and a trauma therapist once a month. She is able to drive. She grocery shops with her fiancé, but has to sit after ten minutes. She does some dusting and cooking, but cannot vacuum for long. (R. 44-62).

The ALJ next took testimony from Nicholas Fidanza, a vocational expert (VE). On a hypothetical question assuming a person with Plaintiff's past work and education; who would be limited to occasionally lift up to twenty pounds; frequently lift ten pounds; stand or walk six hours per day; sit up to six hours per day; should never climb ladders, ropes or scaffolds; only occasionally stoop or crawl; frequent climb ramps or stairs, balance, kneel, or crouch; with the need to avoid temperature extremes, humidity and vibration; limited to only simple, routine tasks; could handle ordinary and routine changes in the work setting or duties; no rapid production rate, pace, or quota type work; could maintain attention and concentration for two hours, but then would require a ten-minute break, the VE opined that such person could not perform Plaintiff's past work. However, jobs such as electronics worker, small parts assembler, and electronic accessories assembly would be available. Next, the VE testified that should Plaintiff's testimony be found credible and supported by the medical evidence of record, she would not be able to perform any type of work. On questioning by counsel, should Plaintiff's conditions cause her to miss work up to three days a month or her mind to wander from what she was doing every ten to fifteen minutes, for three to five minutes each time, the VE opined that there would be no work available. If such person would have to take a break

3

two or three times a day in order to treat her neck and back for about twenty minutes each time, the VE again testified that there would be no work**.** (R. 62-67).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of March 31, 2011, the ALJ determined that while Plaintiff has severe impairments related to lumbalgia, hypertension, mitral valve damage, diverticulitis and major depressive disorder, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work.  Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could not perform her past work, but could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 21-35).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

To prevail on a claim for Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

The Plaintiff raises two claims on this appeal. First, she asserts that the ALJ erred in refusing to find a severe cervical spine and in failing to include limitations from that impairment in the residual functional capacity assessment for Plaintiff. By this argument, both the objective evidence and reports from treating doctors support a severe cervical impairment. She urges there is ample evidence that the condition affects her ability to reach, handle and finger objects, and given that the jobs identified as available to Plaintiff by the VE and ALJ require frequent or constant reaching, handling and fingering, further review is necessary. Next, she urges that the ALJ erred in evaluating the medical opinion evidence from a nonexamining source, Dr. Renny, treating doctors Moukaddem, Stengel, and Finn, and the opinion of a nurse practitioner at Suncoast Center for Community Mental Health (Suncoast). On this ground also, she urges the case be remanded for further review.

In response, the Commissioner initially urges that Plaintiff has failed to make citation to the record in support of her allegations and under the Court's scheduling order the claims should be summarily denied. In any event, he urges that the substantial evidence, in particular the MRI evidence, supports that Plaintiff does not have a severe impairment of her cervical spine. Further, the Plaintiff fails to prove any additional limitations from such condition not considered by the ALJ. As for the opinion evidence, the Commissioner urges that the ALJ properly addressed the evidence from the medical sources. Thus, the ALJ properly discounted the opinions of three treating doctors as given on matters reserved to the Commissioner and

because the opinions were unsupported by the doctors' own records and other evidence of record. Likewise, the ALJ properly discounted the opinion of Susan Cintron, an ARNP, that Plaintiff might not be employable because she was not an acceptable medical source under the regulations and her opinion was not entitled to any special consideration. Given that the record supported the opinion of Dr. Renny, a nonexamining source, there was no error in giving his opinion great weight. Finally, the Commissioner urges that the evidence supports the ALJ's residual functional capacity assessment and Plaintiff fails to demonstrate otherwise.

As the decision reflects, after review of the MRI evidence and records from treating doctors, the ALJ concluded that "[t]he evidence does not support the claimant's allegations that her conditions related to her cervical spine cause work limitations. Accordingly, after reviewing the medical record, the undersigned finds that the claimant's cervical spine conditions are not severe." (R. 24). After considering the whole of the medical evidence related to Plaintiff's cervical condition, I am obliged to conclude that the ALJ's conclusion is supported by substantial evidence. In short, the medical evidence allows the conclusion that Plaintiff's cervical condition had no more than minimal effect on Plaintiff's ability to perform basic work activities and thus was not severe.

At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. Under this regulation, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic work activities,

then she is not disabled.[1]  In this context, basic work activities means "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).  In application, this inquiry is a "threshold" inquiry.  It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

Here, the medical record contains five cervical MRIs, a bone scan and various impressions of Plaintiff's cervical spine.  Thus, as the ALJ noted, Plaintiff has been variously diagnosed with chronic pain syndrome in her neck, cervical osteomyelitis, cervical degenerative disc disease, and osteoarthritis among other observations.  (R. 24).  The concern of a possible bone infection led to multiple MRIs.  Ultimately, these tests revealed that Plaintiff did not suffer osteomyelitis, but rather degenerative disc disease without disc herniation.  The March 2009 MRI revealed mild disc bulge and associated osteophytes at C6-7 without significant central stenosis and left neural foramen stenosis, but no herniated discs or central canal stenosis.  (R. 319-2).  Similar findings were made in July 2009.  (R. 250-51).  These scans were reviewed by neurosurgeon, Dr. Thomas Stengel.  In June 2009, he stated that the MRI revealed "the typical changes seen in the cervical spine by the age of 45 years." (R. 253).  By his consideration, the MRI of the cervical spine was "unconcerning" apart from the possibility of an atypical infection.  (R. 254).  Significantly, Dr. Stengel also reported

---

[1]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

8

neurological and musculoskeletal findings which were essentially normal. Thus, he reported that Plaintiff's concentration, attention, speech, motor coordination, and deep tendon reflexes were all intact and her sensation was normal. Plaintiff had normal gait and station, muscle tone and bulk were within normal limits, muscle strength was 5/5 throughout and straight leg raising was negative. (R. 307). In September 2009, Dr. Stengel noted no change. (R. 297). The November 2009 MRI again revealed degenerative disc disease at C6-7, that is, a bulging disc and bone spur combination which indents the anterior thecal sac with spinal canal narrowing, but with no cord impingement. All other cervical levels were unremarkable. (R. 344-45). In a report to the primary care doctor, Dr. Chitra Ravindra, the condition was described as stable, if not improved over this period. (R. 437). In March 2010, the MRI again revealed no significant findings at any level but C6-7 where the findings of a degenerative condition were again confirmed. (R. 241-42). On referral from Dr. Ravindra, Plaintiff went to neurologist Mary E. Shriver, D.O., in September 2010. She requested a nerve conduction study of her left arm for tingling in her hand. In January 2011, Dr. Shriver reported that the nerve conduction study was normal and revealed "very mild median mononeuropathy which would be expected to cause intermittent mild tingling of the hand depending upon activity and hand position." (R. 489). The exam did not explain the symptoms of tingling in the whole arm and "sometimes aching in the neck." *Id*. Significantly, Dr. Shriver's neurological and musculoskeletal exams also were essentially normal. (R. 491).

As noted above, the burden of assessing and weighing the evidence falls on the ALJ. This Court does not review the factual findings *de novo*, but under the deferential substantial

evidence standard. Here, by my review of the evidence, the ALJ's assessment that Plaintiff's cervical condition was not a severe impairment is supported by substantial evidence.

In any event, insofar as Plaintiff argues that the ALJ erred at step two of the five-step evaluation process dictated by the regulations in finding no severe cervical impairment, the claim is without merit. As stated above, at step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. Under this regulation, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic work activities, then she is not disabled. However, at this step, the finding of *any* severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two. *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r. of Soc. Sec.,* 382 Fed. Appx. 823, 824-25 (11th Cir. 2010). Here, the decision reflects that the ALJ credited Plaintiff with a number of severe impairments at step two. Thus, even if Plaintiff suffers a severe cervical impairment, there was no error at this step.

However, Plaintiff also argues that the ALJ failed to fully assess the limitations arising from any cervical condition and factor them into his residual functional capacity (RFC) assessment. In short, she argues her cervical condition, including her headaches, would render her more limited than determined by the ALJ. She urges that there is ample evidence of numbness and tingling in her arm, as evidenced by findings from Drs. Ravindra and Nasser Moukaddem and by the nerve conduction study ordered by Dr. Shiver. Furthermore, the

evidence "should lead to some limitation in reaching, handling, and fingering to only occasional." Since each of the jobs identified by the VE require frequent or constant reaching, handling and fingering, the case should be remanded.

After careful review of the whole of this record, I again conclude that Plaintiff does not demonstrate error in the ALJ's conclusion that any tingling experienced by Plaintiff was not severe enough to limit her functional capacity for light work.[2]  First, as noted above, the record provides adequate support that Plaintiff's cervical condition did not affect, more than minimally, her ability to do basic work activities, which include lifting, pushing, pulling, reaching, carrying, and handling.  Beyond that consideration, the doctors noted by the Plaintiff do not ascribe any particular limitations in reaching, handling, and fingering despite the Plaintiff's claims of tingling in her left arm.  By Dr. Ravindra's finding, there was no gross sensory loss, motor strength was "slightly weak" in the left arm, grip was 5/5 for passive movements and reflexes were normal.  (R. 460).  Dr. Moukaddem did render an opinion for short-term disability which referenced numbness in hands and feet, however my review of his medical reports does not support a particular limitation in function and Plaintiff does not point one out either.  As noted above, Plaintiff was seen by neurologist, Dr. Shriver, on referral from Dr. Ravindra, who ordered a nerve conduction study.  Dr. Shriver reported back that the nerve conduction study was "NORMAL."  (R. 488).  While the study's findings would

---

[2]Here, the Commissioner's complaint that Plaintiff fails to provide record support for her claim is on point and well-taken.  Beyond the general citation to her complaints to Drs. Ravindra and Moukaddem of tingling in her arm, she offers no evidence from their records to support the claim of greater functional limitations.  While her counsel suggests certain conclusions are appropriate, such are not supported by the record.

11

support "intermittent mild tingling of the hand depending upon activity and hand position," Dr. Shriver noted that the exam did not explain the symptoms of tingling in the entire arm and her claim of sometimes aching in the neck. (R. 489). Most significantly, Dr. Shriver's neurological and musculoskeletal examination of Plaintiff were also essentially normal. (R. 491). While Plaintiff broadly contends that such evidence dictates a limitation to only occasional reaching, handling, and fingering, when reviewed closely, the medical evidence does not dictate that conclusion. Again, it is for the ALJ and not this Court to assess and weigh the evidence and to draw conclusions from the same. On this record, I am again obliged to conclude that the ALJ's RFC assessment is supported by substantial evidence and Plaintiff fails to demonstrate otherwise.[3]

On her second claim, Plaintiff urges that the ALJ erred in evaluating the medical opinion evidence of treating doctors Moukaddem, Stengel, and Finn; and the opinion of a nurse practitioner at Suncoast; and in adopting the opinions of nonexamining doctor, Dr. Renny. In the particular circumstances of this case, I find no error requiring a remand.

In this Circuit, certain rules apply to the consideration of the medical opinions of treating, examining and nonexamining doctors. "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental

---

[3]Plaintiff adds here that the ALJ should not have discredited her complaints of headaches since such can start in the neck and radiate up to the head. While this may be so, Plaintiff's claim that she wakes daily with headaches is not borne out by the medical evidence.

12

restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Id.*  Thus, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  *Lewis*, 125 F.3d at 1440.  The opinion of an examining doctor typically is entitled to more weight than the opinion of a nonexamining doctor.  20 C.F.R. § 404.1527(d)(1); *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985).  The reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative decision.  *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir.1987)).  However, an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources.  *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

As for the opinion evidence from treating doctors Moukaddem, Stengel, and Finn[4] that Plaintiff cannot work, such opinions are not medical opinions and receive no deference in this Circuit. Thus, a treating source's opinion that a claimant is unable to work is not a "medical opinion" as defined by the regulations, but an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Where the record contains such an opinion, the ALJ must evaluate all the evidence to determine the extent that it is supportable by the record, but an opinion that a claimant is unable to work is never entitled to controlling weight or special significance. *See* SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996). As the decision reflects, the ALJ gave due and proper consideration to these opinions and discounted them as opinions reserved to the Commissioner under the regulations; on findings that Dr. Finn's opinions were completely unsupported; and Drs. Moukaddem's and Stengel's were contrary to their own records or the record as a whole. While Plaintiff urges that this cannot be true, she fails to demonstrate any error from the record. In sum, the opinions were not entitled to any deference and otherwise were properly discounted.

Similarly, I conclude that the ALJ decision to discount the opinion of Ms. Susan Cintron, an ARNP, that Plaintiff "may not be capable of employment" was also in accordance with the applicable standard and supported by the record as a whole. On the form, Ms. Cintron checked a box suggesting that Plaintiff was perhaps incapable of work and another

---

[4]Once again, contrary to the Court's scheduling order Plaintiff fails to provide record cites for the opinion evidence at issue from these doctors. This alone is grounds to deny the claim under the order. In reviewing the claim, I have considered the opinion of Dr. Moukaddem that Plaintiff was temporarily disabled (R. 365, 369); the opinion of temporary disability from Dr. Stengel (R. 302); and the opinion of temporary disability of Dr. Finn (R. 342, 346).

14

box indicating that she would need three months for intensive therapy by reason of her bipolar disorder. (R. 421). While Plaintiff does not dispute that Ms. Cintron was not an acceptable medical source, she urges the ALJ did not otherwise consider the opinion as he should have. The decision reflects otherwise.

First, the regulations do prescribe that evidence of impairments must come from "acceptable medical sources," defined therein to include licensed physicians or osteopathic doctors and licensed or certified psychologist, among other professionals. 20 C.F.R. §§ 404.1513(a), 416.913(a). This designation is significant. As noted in SSR 06-3p, the designation as an acceptable medical source is necessary because only such sources can establish a medically determinable impairment and give medical opinions under this regulatory scheme. SSR 06-03p, 2006 WL 2329939, at *2 (Aug 9. 2006).[5] However, neither nurse practitioners nor therapists are "acceptable medical sources" under the regulations nor may they claim to be treating physicians. 20 C.F.R. §§ 404.1513(d), 416.913(d). Moreover, neither are their opinions entitled to any particular deference, although they are appropriate for consideration along with all the evidence in making the disability decision. 20 C.F.R. §§ 404.1513(d), 416.913(d).

In SSR 06-03p, it is suggested that such opinion evidence is appropriately considered along with other evidence under the considerations listed by the regulations at 20 C.F.R. §§

---

[5]Social Security Rulings are agency rulings issued to clarify regulations and policy and are binding on all components of the Administration. *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). Such rulings are not binding on this Court; however, they are accorded deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex. rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

15

404.1527 and 416.927 for weighing acceptable medical opinions.  Thus, in weighing such opinions, factors such as how long the source has known the claimant and the frequency of their contact, the consistency of the source's opinions with the other evidence, the degree to which the source supports and explains the opinions, and whether the source has a specialty or area of expertise related to the claimant's impairments, along with any other relevant factor, is appropriately considered in weighing such opinions.  SSR 06-03p, 2006 WL 2329939 (Aug 9. 2006).

>In addressing this opinion, the ALJ stated,
>
>Additionally, the claimant's mental health care provider, Susan Cintron, A.R.N.P., opined that the claimant "may not be capable of employment" in January 2010 (Exhibit 19F). However, Ms. Cintron is not an acceptable medical source under the regulations (20 CFR 404.lS13(a) and 4l6.913(a)), and only acceptable medical sources can give medical opinions (20 CFR 404.l527(a)(2) and 4l6.927(a)(2)). Furthermore, her opinion is not supported in the record with evidence of long-term treatment by a mental health specialist or psychiatrist. Therefore, the undersigned assigns little weight to this opinion.

(R. 32). In my view, this puts to rest Plaintiff's claim that the opinion of Ms. Cintron was not considered beyond the conclusion that she was an ARNP.  Further, Plaintiff wholly fails to address the conclusion that the opinion was not based on long-term care or supported by the mental health record.  A review of the records from Suncoast fully supports that conclusion.  By these records, Plaintiff began at Suncoast in December 2009.  Barely one month later and seemingly after only one contact, Ms. Cintron gave her opinion on the same date that Plaintiff might not be employable.  Beyond the fact that the opinion was equivocal, Ms. Cintron's mental status exam on that date wholly undermines this employability opinion.  *See* (R. 423).  In short, I find no error in the ALJ's handling of this opinion.

Finally, in the circumstances of this case, the ALJ did not err in giving the RFC assessment of nonexamining doctor Thomas Renny, D.O., great weight on the conclusion that such was consistent with the evidence as a whole. Here, Plaintiff complains that Dr. Renny's RFC was based entirely on the consultative examination of Dr. Robert Shefsky who performed a short exam without the benefit of MRI or other evidence. Further, without any record citation for support, she urges that the RFC is inconsistent with other treating and examining doctors. By my review of this record, that is simply not the case.

As noted above, an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources. *See Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991). In this regard, it is notable that Dr. Renny offers the only physical RFC in the record. While Plaintiff urges the reports from Drs. Stengel, Ravindra, Moukaddem, Finn, and Shriver offer inconsistent evidence and opinions, such is not demonstrated to be the case except insofar as they generally suggested temporary disability. Indeed, as discussed above, when these doctors reported neurological and musculoskeletal findings, their findings were largely "intact" and "normal," and they did not suggest limitations beyond those found by Dr. Renny. While Plaintiff claims otherwise, she fails to demonstrate this with particularity. Most significantly, she fails to show from the medical record that this RFC overstates her functional capacity or that she suffers limitations not included therein. Thus, in this case I find no error in giving Dr. Renny's RFC great weight.

## D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 9th day of November 2012.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.


Copies furnished to:
United States District Judge
Counsel of Record